UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| BILLY SANTANA, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | 2:05-cr-00105-DBH-1 |
| | ) | 2:10-cv-00332-DBH |
| UNITED STATES OF AMERICA, | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Billy Santana has filed a 28 U.S.C. § 2255 motion challenging his attorney's performance on the grounds that he has recently learned that his attorney had a conflict of interest because, prior to representing Santana, he represented the government's "star witness," Stanley Piper. Santana relies upon his July 2010 discovery of a 2002 First Circuit opinion regarding Piper's direct appeal, United States v. Piper, 298 F.3d 47 (1st Cir. 2002), as the trigger for his current § 2255 motion. According to Santana, Piper was a key witness during Santana's prosecution in the State of Maine for aggravated drug trafficking for which Santana was sentenced in 1999 to seven years. Santana was indicted in the federal system in December 2005. He pled guilty to the federal offense but asserts that Piper would have also been the key witness in his federal trial had he not pled guilty.

In a previous order to show cause I requested that Santana address how this motion could be considered timely under 28 U.S.C. § 2255(f) and to fill in the blanks as to how Piper could have potentially impacted the federal case. (See Doc. No. 518.) Santana responded (Doc. No. 520) and I entered an order to answer (Doc. No. 522). The United States has now answered and requested summary dismissal (Doc. No. 538). Santana has not made any further filings to date.

**DISCUSSION**

*Timeliness*

Santana was sentenced by this Court on October 31, 2007. He did take a direct appeal and the First Circuit Court of Appeals affirmed his sentence on February 23, 2009. He had ninety days to seek review for the United States Supreme Court. See <u>Clay v. United States</u>, 537 U.S. 522, 527-32 (2003). Santana indicates that he has not filed any other motions for relief from his sentence since the First Circuit denied him relief. This 28 U.S.C. § 2255 motion was filed on August 9, 2010.[1]

It is Santana's contention that he could only have discovered his attorney's conflict of interest in November 2009, two months after his transfer to his current federal correctional facility. In my earlier order I assumed that Santana is invoking subsection (4) of § 2255(f). Santana does not explain with any factual specificity why it took him until July 22, 2010, to unearth the First Circuit opinion listing his attorney as an attorney of record for Piper in the 2002 First Circuit case. In his response to my order to show cause Santana insists that his § 2255 motion is timely on its face pursuant to subsection (f)(4). (OSC Resp. at 3, Doc. No. 520)

---

[1] Section 2255(f) sets forth the following statute of limitations provisions:
A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
    **(1)** the date on which the judgment of conviction becomes final;
    **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
    **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C § 2255(f).

(quoting Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000)). Santana states that the statute on its face does not require the "maximum feasible diligence." (Id. at 3.)[2] He reasons: "Santana filed his Section 2255 motion within one year of the 'maximum feasible diligence' date and therefore it is timely under § 2255(f)(4)." (Id.)

The Second Circuit's Wims v. United States, 225 F.3d 186 (2d Cir. 2000) concluded:

> Section 2255[(f)](4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run. Rather, it resets the limitations period's beginning date, moving it from the time when the conviction became final, see § 2255[(f)] (1), to the later date on which the particular claim accrued. See Smith [v. McGinnis], 208 F.3d [13,] 15 [(2d Cir. 2000)]. (distinguishing tolling provisions from those that restart the limitations period). It was, therefore, incorrect to ask, for § 2255[(f)](4) purposes, whether appellant's entire sixteen-month delay comported with due diligence and to conclude, as the district court did, that because this lengthy a delay was undue, appellant derived no benefit from § 2255[(f)](4). In effect, the district court's approach deprived petitioner of the one year during which, under the AEDPA, he was entitled to rest on his claim.
> The proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence.

Id. at 190 (footnotes omitted).

It is the United States' position that Santana had, at best, one year from May 20, 2009, to submit this petition – ninety days from the entry of judgment entered by the First Circuit which was not appealed to the United States Supreme Court. (Gov't Resp. at 17.) Even giving Santana the benefit of the doubt, on an ordinary trajectory he would have needed to file this motion by no later than June 11, 2010. With regards to Santana's response to the order to show cause and his

---

[2] Santana takes this language from Footnote 14 of the decision. Wims, 225 F3d at 190 n. 14.

belief that the statute of limitation should be pegged to his November 2009 arrival at FBC Schuylkill the United States urges that Santana could have readily learned of the facts underlying his conflict of interest claim well before his one-year deadline under 28 U.S.C. § 2255(f)(1). It insists that Santana's calculation stemming from his November 2009 access to TRULINCS at Schuylkill requires "ignoring Santana's approximate two-year residence at the Raybrook facility from November 29, 2007 to September 11, 2009, throughout which time he had access to the Piper opinion…" (Id. at 18.) It explains:

> As the Raybrook Inmate Law Library supervisor's Declaration and attachments thereto explain, the materials readily available to Santana throughout his entire stay at FCI Raybrook included the federal reporter containing the Piper, 298 F.3d 47, opinion (Snyder Affid. ¶¶6-9 and Exhibit One). Santana had ample time well before and after his conviction became final on May 20, 2010 to conduct inquiries and exhaust any claims regarding counsel, his federal offense, guilty plea and conviction.

(Id. at 20) (citing Lattimore, 311 F.3d 46, 55 (1st Cir. 2002)). Santana, the United States complains, waited "until years after retaining his counsel and then filed his § 2255 motion not only about over two months after the one-year deadline, but also nearly 11 months after he was moved to Schuylkill with access to TRULINCS … on September 14, 2009." (Id.) Citing Government Exhibit C (Doc. No. 538-3), the United States provides the following description of TRULINCS: "TRULINCS is merely a slower, highly regulated version of email increasingly available in some BOP facilities. TRULINCS merely allows -- not unlike a phone call, regular mail or in-person visit -- communication between inmates and approved persons with whom they want to correspond by email. It does not provide inmates Internet access or even allow transferring attachments." (Id.) It noted that the "absence of TRULINCS did not prevent Santana from communicating -- from the moment his judgment became final and well before that time -- either in person, by phone or by regular mail with any of the approved persons with

whom he now has TRULINCS email contact." (Id.)³ It highlights that Santana's discovery of the potential conflict issue was inadvertent and stresses that "the Piper opinion Santana would have been looking for (albeit unavailable as an attachment via TRULINCS) was available to Santana the entire time he was at Raybrook." (Id. at 21.) It summarizes:

> The appellate court opinion upon which Santana relies was publicly available about three and one-half years before Santana's most recent federal incarceration in January 2006, and nearly seven years before his § 2255 one-year time limit even began to run. Notwithstanding that reality, even if TRULINCS was the only means available for Santana to locate a publicly published First Circuit opinion issued in July 2002, which the Government contends is not so, Santana had over eight months remaining within § 2255(f)(1)'s one-year limitation period that did not expire until May 20, 2010 to conduct further research after his arrival at Schuylkill.

(Id. at 21-22.) The United States relies on the First Circuit's Trenkler v. United States, 268 F.3d 16, 26 (1st Cir. 2001) equitable tolling discussion for the proposition that the availability of case law factually linked to the § 2255 movant's claim prior to the running of the § 2255 statute of limitation is a factor in determining whether or not there was an excuse for not complying with the § 2255(f)(1) limitation period.⁴ This approach is echoed in Schlueter v. Varner, 384 F.3d 69, 75 (3d Cir. 2004) which addressed a similar dispute in the context of 28 U.S.C. § 2254 review.

---

3   The United States' citations for this proposition are:
    See, e.g., Morgan, 2009 WL 2591265, at *5 (rejecting petitioner's claim that newly-discovered evidence about victim's criminal history obtained from court "printouts" warranted relief from one-year filing deadline because "[p]etitioner...failed to demonstrate...due diligence in obtaining such information. It is without dispute that this information is public record and was readily available to Petitioner by way of telephone, written request, or internet"); United States v. Larry, 2010 WL 5651470, at *3 (N.D.Fla. Dec. 17,2010) (Slip.Op.) (neither prison transfers nor circumstances of confinement rendered petitioner unable to contact the court by phone, in writing or through a third-party).
(Id. at 21.)

4   The Panel reasoned:
    Trenkler argues that, since his § 2255 motion features the claim that his trial attorney's failure to introduce Dr. Phillips's testimony constituted ineffective assistance in violation of the Sixth Amendment, the most "appropriate" and efficient route was to "await a determination as to the admissibility of the doctor's testimony." Although that argument suffers from several flaws, there is one that predominates: the determination for which Trenkler claims he needed to wait was

5

Santana's use of the Wims decision is creative but the United States has a very good argument based on the prior history of his incarceration for why this latent discovery of the Piper case does not align with the facts of cases that flow through to review under § 2255(f)(4). The record evidence is that TRULINCS was not the only source at Santana's disposal to research possible grounds for § 2255 relief or, specifically, uncover the Piper decision. It is not Santana's contention that he did not know of Piper's involvement in his relevant criminal conduct and the prior state proceedings from the get go. And he certainly knew of the identity of his attorney during his representation of Santana. It was a matter of putting two and two together; as the United States points out his discovery of the prior representation was coincidental and it is equally coincidental that it happened through TRULINCS rather than a different avenue. Due diligence means active attempts at researching facts and law applicable to the conviction or sentence. Wims recognizes that this is the first step to reaching the § 2255(f)(4) threshold. Although Santana believes that the period between his transfer to Schuylkill and his discovery of the First Circuit Piper case is not relevant under § 2255(f)(4), it is relevant to the threshold due diligence inquiry when it is placed in the context of the prior period at Raybrook during which he

---

made well before § 2255's statute of limitations even began to run, when we held on June 22, 1995, that the district court should have admitted Dr. Phillips's testimony under Rule 702. Indeed, Trenkler's Rule 33 motion was based entirely on the argument that he had "newly discovered" that Dr. Phillips's testimony was admissible *because of our decision on June 22, 1995.* That he felt it prudent to wait for the completion of yet another round of litigation before filing a motion under § 2255 does not excuse his failure to comply with the one-year limitation period.

(Id.)

had post-conviction[5] access to the legal resources that could have unearthed the connection. See Easterwood v. Champion, 213 F.3d 1321 (10th Cir. 2000).[6]

In my view Santana's case for triggering subsection (f)(4) and an additional year to prepare a claim based on his access to a different technological service upon transfer is smoke and mirrors given the unchallenged information provided by the United States in its response that Santana had full access to legal resources that could have unearthed the case in question after his guilty plea and long before his transfer to Schuylkill. Based on the discussion in Trenkler I believe that this would be a well grounded reason for denying Santana § 2255 review and relief. However, in the alternative, I turn to a short review of the merits of his ineffective assistance claim.

### *Conflict of Interest*[7]

With regards to Santana's Sixth Amendment ineffective assistance claim, Strickland v. Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474 U.S. 52 (1985) govern the resolution of the merits of his single 28 U.S.C. § 2255 ground. "In order to prevail," Santana "must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words," Santana "must demonstrate

---

[5] I say post-conviction because I do not take into consideration Santana's pre-conviction access to the Piper decision as I will assume for the purpose of this case that the jumping off point in terms of the motivation to uncover grounds to challenge a judgment is the entry of the judgment.

[6] The United States points out that the record evidence in this case (unchallenged by Santana) is that the Federal Reporter in question entered circulation at the Raybrook library no later than January 2003. Regular inventories of the library have revealed neither discrepancies nor damage to that volume. (See Gov't Resp. at 26.)

[7] With respect to Santana's due diligence argument, he acknowledges that he must show that his attorney could have pursued a plausible alternative defense strategy and that the defense tactic was inherently in conflict with or not pursued because of his attorney's other's loyalties or conflicts. (Sec. 2255 Mot. at 8.)

both seriously-deficient performance on the part of his counsel and prejudice resulting there from." Id.

The fact that Santana discovered his attorney's name on the First Circuit opinion on Piper's direct appeal and that Piper may have had something to do with Santana's previous state criminal case, does not, alone, create a concern about the validity of Santana's guilty plea and sentence under the First Circuit precedent. See. e.g., United States v. Burgos-Chaparro, 309 F.3d 50, 52 -53 (1st Cir. 2002); Reyes-Vejerano v. United States, 276 F.3d 94, 97 (1st Cir. 2002).

In his response to the order to show cause Santana musters the following explanation,

> at least a strong argument can be made that, when [his attorney] advised Santana to plead guilty, he was not looking for Santana's best interests but his own because, at trial, he would have had to disclose to this Court that Piper was his former client and that he failed to disclose that fact to Santana when he understood his legal representation in violation of Maine Code of Professional Responsibility … which, in turn, would have subjected [Santana's attorney] to possible disciplinary sanctions. See Local Rule 83.3.

(OSC Resp. at 7) (footnote omitted).

The United States responds to this merits aspect of the 28 U.S.C. § 2255 motion in the following manner. It is its contention that, even after the further briefing on the show cause order, Santana has not demonstrated that there is a sufficient nexus between Santana's attorney's prior representation of Piper in the state court and his representation of Santana in his federal criminal case.

The First Circuit addressed the contours of an ineffective assistance claim premised on a conflict of interest in Teti v. Bender:

> Under federal law, an ineffective assistance of counsel claim requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). If, however, a defendant can show that his attorney "actively represented conflicting interests" in breach of the attorney's

8

> duty of loyalty, and if the defendant can show that this "actual" conflict of interest "adversely affected [the] lawyer's performance," then the stricter prejudice showing required by Strickland does not apply. Id. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 350 (1980)) (internal quotation marks omitted); see also Allison v. Ficco, 388 F.3d 367, 370 (1st Cir.2004). In Mickens v. Taylor, 535 U.S. 162 (2002), the Supreme Court emphasized that an actual conflict of interest does not result in an automatic reversal; in almost all cases, some showing of an adverse effect is still required. Id. at 171, 173-74. Lesser ("potential") conflicts of interest can also be the basis of an ineffective assistance claim, but the more stringent prejudice prong of Strickland then applies.

507 F.3d 50, 55 (1st Cir. 2007).

Santana's notion that there was a conflict of interest due to his attorney's prior representation of Piper influencing his advice to Santana to plead guilty is, on the record before me, pie in the sky. By his own phrasing Santana can "at least" make a strong argument that his attorney's representation of him encouraging him to accept a plea was influenced by some sort of potential disclosure at trial that he previously represented Piper. The United States has provided the Court with an affidavit by the prosecuting Assistant United States Attorney insisting that the United States did not use Piper in regards to the grand jury proceedings relative to Santana and never identified Piper as a witness or contemplated calling Piper as a witness in a potential federal trial against Santana. (Bunker Aff. ¶¶ 2-8, Doc. No. 538-4.) Santana has not countered this affidavit. There is no indication in the federal docket that Piper played any part in Santana's sentencing proceedings. There is simply no credible evidence that Santana's attorney had any reason to believe that Piper, of United States v. Piper, 298 F.3d 47 (1st Cir. 2002) fame, would have any role in the potential trial in this 2005 case and, accordingly, no inkling that there could be a perception of a conflict of interest vis-à-vis his representation of Santana in his federal criminal case. Under the Strickland-premised case law discussed above, it is clear to me that there is no merit to Santana's single § 2255 claim.

9

**CONCLUSION**

As set forth above, Santana should be denied 28 U.S.C. § 2255 relief. Not only has he not made a viable case as to how this court could construe his motion as timely, the factual premise for his conflict of interest ineffective assistance claim is entirely unsubstantiated. I further recommend that a certificate of appealability should not issue in the event Santana files a notice of appeal because there is no substantial showing of the denial of a constitutional right as contemplated by 28 U.S.C. § 2253(c)(2).

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 9, 2011.